IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EXCAVATING, GRADING, ASPHALT, PRIVATE SCAVENGERS, AUTOMOBILE SALESROOM GARAGE ATTENDANTS AND LINEN AND LAUNDRY DRIVERS, LOCAL NO. 731, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, <br><br>    Judgment Creditor, <br><br>v. <br><br>LINDA CONSTRUCTION, INC., <br><br>    Judgment Debtor, <br><br>INTERNATIONAL WAREHOUSE, INC., <br><br>    Third-Party Citation Respondent. | Case No. 13 C 4465 <br><br> Magistrate Judge Rowland |

## MOTION FOR JUDGMENT AGAINST FRAUDULENT TRANSFEREE

Judgment Creditor Excavating, Grading, Asphalt, Private Scavengers, Automobile Salesroom Garage Attendants and Linen and Laundry Drivers, Local No. 731, International Brotherhood of Teamsters, (the "Union"), through its attorneys, respectfully moves for a judgment to be entered in its favor against transferee and Third-Party Citation Respondent International Warehouse, Inc. ("International Warehouse") for accepting money in the form of checks as a fraudulent transfer from Judgment Debtor Linda Construction, Inc. ("Linda"). In support of its motion, the Union states as follows:

### FACTS

1.    Linda Construction is owned by Linda and Jessie McGee, Sr. (Exh. A, Transcript of the Deposition of Linda McGee at 11). Linda Construction is no longer in operation (Exh. A at 11, 16). The last day that Linda Construction was in operation was the first week of April 2014

1

(Exh. A at 11-12). Linda's office was at 11860 Cottage Grove, Chicago, IL, 60628 (Exh. A at 16-17). Linda's bank accounts were all closed around the time Linda went out of business generally (Exh. A at 32, 47).

2. International Warehouse is a company owned by Linda and Jessie McGee's daughter (Exh. A at 30).

3. On March 21, 2013, the Labor/Management Committee ("LMC"), a joint arbitration board provided for in the Union's collective bargaining agreement ("CBA") with Linda, issued eight arbitration decisions against Linda based on grievances by certain of Linda's employees. Linda filed a complaint to vacate those awards and, on September 4, 2013, the Union filed a counterclaim to enforce those awards. On November 10, 2014, the Court dismissed Linda's complaint and entered judgment against Linda on the Union's counterclaim in the amount of $20,393.06 [Docket No. 70].

4. As shown from the chart and check copies attached as Exh. B, during the period of the lawsuit from March 7, 2013 to September 13, 2013, Linda wrote fifteen checks to International Warehouse, for a total of $24,528.23.

5. Linda wrote these checks to International Warehouse around the time it was going out of business (Exh. A at 29). At the deposition Linda McGee claimed that Linda possibly wrote checks to International Warehouse to haul garbage for it, but she also stated that she could not recall what International Warehouse did (Exh. A at 29).

6. On November 25, 2014, the Court issued a third-party citation on International Warehouse to discover assets served on the basis of the November 10, 2014 judgment (Exh. C). By email of December 15, 2014, the Union allowed International Warehouse until January 12,

2015 to respond to the third-party citation (Exh. D), but the Union did not receive a substantive response.

**ARGUMENT**

7. The Seventh Circuit has found that a motion for relief against the recipient of fraudulently transferred property can be brought in a post-judgment proceeding. *Star Ins. Co. v. Risk Mktg. Group, Inc.*, 561 F.3d 656, 662-63 (7th Cir. 2009).

8. Pursuant to Illinois' Uniform Fraudulent Transfers Act ("UFTA"), 740 ILCS 160/1, *et seq.*, a transfer made by a debtor to a creditor is fraudulent, regardless whether the creditor's claim began before or after the transfer was made, if the debtor made the transfer:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> (A) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. 740 ILCS 160/5(a).

9. The Seventh Circuit has found that these two types of transfers amount respectively to actual and constructive fraudulent transfers. *Centerpoint Energy Servs., Inc. v. Halim*, 743 F.3d 503, 506 (7th Cir. 2014). Both actual and constructive fraudulent transfers are present in this case.

10. An actual fraudulent transfer occurred, which is evident from Linda's actual intent to defraud the Union in transferring money through fifteen separate checks to International Warehouse. *See* 740 ILCS 160/5(a)(1). The UFTA includes several factors to be considered in

3

determining actual intent, but none are determinative. Many of these factors are present in this case:

> a) Linda's transfers were made to an insider. 740 ILCS 160/5(b)(1). As Linda McGee admitted in the deposition, her daughter owns International Warehouse (Exh. A at 30). The UFTA provides that an insider of a debtor includes the debtor's relatives. 740 ILCS 160/2(g)(1)(A); *In re Mussa*, 215 Bankr. 158, 168 (Bankr. N.D. Ill. 1997) (transfer to son is transfer to insider).
>
> b) Additionally, the debtor, Linda, had been sued or threatened with suit before the transfers were made to International Warehouse. 740 ILCS 160/5(b)(4).
>
> c) Linda was also insolvent or became insolvent shortly after making the transfers to International Warehouse. 740 ILCS 160/5(b)(9).
>
> d) The value of the consideration received by Linda was not reasonably equivalent to the value of the money transferred through the checks. 740 ILCS 160/5(b)(8). There is no evidence that Linda received anything for those checks because Linda McGee stated that she could not recall what they were for (Exh. A at 29).
>
> e) The transfers from Linda to International Warehouse happened right before or after Linda incurred a substantial debt. 740 ILCS 160/5(b)(10).

11. Further, a constructive fraudulent transfer also occurred here because Linda did not receive a reasonably equivalent value for the check transfers to International Warehouse, and the debtor reasonably should have known that it would incur debts beyond its ability to pay as they became due. 740 ILCS 160/5(a)(2). Linda ignored requests by the Union to prove what the checks were paying for, and in the deposition Linda McGee admitted that she could not recall what International Warehouse was doing for the company (Exh. A at 29). As far as the evidence shows, Linda wrote checks to its daughter's company, International Warehouse, for absolutely no reason.

12. The UFTA permits creditors to receive as relief for fraudulent transfers a judgment against the transferee in the value of the judgment against the debtor. 740 ILCS 160/9(b)(1).

**PRAYER FOR RELIEF**

**WHEREFORE,** the Union respectfully requests the following relief:

a. That judgment be entered in its favor and against International Warehouse in the amount of the Union's judgment against Linda, i.e. $20,393.06, in the form of the attached proposed order or otherwise; and

b. Such further or different relief as this Court may deem proper and just.

Respectfully submitted,

/s/ Josiah A. Groff
Josiah A. Groff
One of the Judgment Creditor's Attorneys

Robert E. Bloch (#6187400)
Josiah A. Groff (#6289628)
Lauren B. McGlothlin (#6317376)
DOWD, BLOCH, BENNETT & CERVONE
8 S. Michigan Avenue – 19th Floor
Chicago, IL 60603
(312) 372-1361

March 4, 2015